Okay. How do you pronounce your client's last name? Is it Scholes? Scholes. Scholes? Scholes. v. Illinois Central. Mr. Schmieder, please proceed when you're ready. Okay. And may it please the Court, Your Honor, my name is Bob Schmieder with the firm of Pratt & Tobin out of Bethel, Illinois. And this is a case in which we represent a railroad worker, and of course the law would be under F.E.L.A. And F.E.L.A. carries a three-year statute of limitations. In this particular case, Mr. Scholes worked for the railroad approximately 35 years as maintenance of a trackman. They would be out there repairing the track or maintaining the track. I think his job came, started working for them in 1970, and then approximately sometime in 2005, he leaves that job and takes a union position in there. In this particular case, we have filed a repetitive type of complaint for a cumulative type of trauma. And I think the issue in this particular case is, did the statute of limitations expire or run in this particular case? And as I see it, Your Honor, Your Honors, that it did not. And the reason being is this. Number one, in these cumulative type of cases, there are Supreme Court opinions basically indicating that you have to have two things. Number one, the gentleman or the plaintiff must know that he has an injury and that the injury is work-related. Do you dispute that he learned that in 2004? Do you dispute that he learned that in 2004? I do dispute that. And the reason being, Your Honor, is this. Under this, these gentlemen are out there on the track, and they're going to get injured basically maybe once a year or something. They're going to have a back problem. They're going to have something. But they shrug it off, and they go on to the work. Or they may go see a chiropractor or a doctor, get an analgesic, and proceed from there. And I think the problem or the point that I'm trying to make is the courts have always said, you know, you have a de minimis type of injury where it's not that very much significant. They don't consider that to be the starting of the running of the statute of limitations. And so what we have here, he did have injuries in the 1980s. I think he had a chip work-related back. He had some injuries in the 1990s. He saw a doctor for that. I think he even entered into a settlement with the railroad on those particular type of injuries. Based upon the facts as I know them, from 1997 up to the time he goes to see Dr. Stanfield in July 5th of 04, he basically has not seen any doctor for any type of injury that is work-related regarding his back, neck, legs, or anything of this nature. Then on July 4th, excuse me, July 5th of 04, he goes and sees Dr. Stanfield, a chiropractor. And there's a form in there, and it says the reason for the visit, and it says work in there. And then the doctor takes basically some x-rays, and the x-rays that he takes are essentially at the area of L4 and L5 disc spaces. And he comes back three days later, I believe it is, on the 7th of July, and he says the adjustments and everything has been fine. He's been better for quite some time in this particular case. And the point that I'm driving at there is this. If he comes back better, and he's got, let's say he has an injury that's out there work-related, and he pulled a muscle or something like this, but he comes back better, we don't file lawsuits over that. And I think that becomes into a minimalist type of rule in this particular case. But what is interesting in this, he goes and sees a Dr. Garnett approximately 18 months later in December of 05. Now, in December of 05, he talks to Dr. Garnett about it. He says Dr. Garnett sat him down, and at that time explained to him that basically it is his work out there on the railroad that caused or contributed to the degenerative type of condition he has in his back or in his spine. And the one thing that I think is important here is while he circles the word work, he is never questioned by the railroad, what did you mean by that? What did you mean by that word work in this thing here? Could he have been mocked or that day, two days ago before the 4th of July holiday, picked up something, had a sprain in his back, goes to see the doctor and says what are you here for? I'm here to see you with regard to a work problem. And then three days later after the adjustment, he's fine, and he doesn't see another doctor for his back until that time. And there is some case law out there that indicates that basically that if it's an intermittent type of pain, it does not necessarily start the running of the statute of limitations. Because a man who is, well, take a man that starts out there working at this point, by the time he gets 60, he's going to have a traumatized back. There's going to be micro trauma to his back, which we sometimes call cumulative trauma in that. But we don't have a gentleman, and I don't think the court's favored the gentleman, coming in and constantly filing a lawsuit over some minutiae type of thing or a minimalist type of thing. Well, anyway, he sees, but the other thing I noticed in the thing there, he sees Dr. Stanfield. And Stanfield sees that he has some problems at the area of L4-5. But when he sees Dr. Garnett 18 months later, Dr. Garnett finds it at another level, L1-2. Now, what we have here in this particular case is the trial court basically saying that, no, that's what he knew or should have known of his injuries. And yet he had never been questioned about the word work in that form he filled out. Second of all, we have a different area of the back. And I think that at best in this particular type of case, Your Honor, is the fact that we have what I consider is like a de minimis type of injury that presents a question of fact for the jury. The question of fact is basically one, when did you know you had an injury? And then when did you know it was work-related? I think there's too much ambiguity here. After Dr. Stanfield seeing him in L4, July of L4, he has his heart attack. He goes off to work. But before he sees him one more time, Dr. Stanfield in his notes says the lower lumbar spine is better than it has been for quite some time. He's getting up now, getting up in the morning now and not having chronic low back pain. So basically, after the adjustment by Dr. Stanfield, his condition has improved. And I don't think that this is the type of condition that puts one on notice in this particular case. And there's also some case law out there that essentially says that if you've got what I call an intermittent type of pain versus a constant type of pain, the courts don't look upon that as the starting of the statute running the statute of limitations in this case. And so with this in mind, it seems to me that we have at best here a question of fact under the facts of this particular case as to when the statute of limitation is run. And that question should be resolved by a jury in this case. And I also would just like to point out as a passing that, you know, we are under a federal statute. And the federal statute basically is a – the courts have described it as a humanitarian type of statute, that it's there to protect the worker and make sure that he has a – that he can exert his rights under the statute. And basically, the courts have taken the situation that, look, if this is humanitarian, it's trying to help these gentlemen out there think that they should be given the right to present their case and let a jury decide the factual issues. And they still say such things in the federal laws that it's – these cases go to the jury more often than they would do in a common law case in this particular case. And let me ask you about this back in 2004 with Dr. Stanfield. Is there anything in the record where Stanfield says it's work-related or where the plaintiff says work-related, not just work? No, the only thing – well, here, Your Honor, what it says is this on there from what – as I'm reading it, okay? It says, describe the pain and location. It says, low back, gradual, okay? But then in another spot it says, what was the reason for your being here? And he says – and he'll say, the reason for this visit is the result of – and it says, please certain this is work on there. But he was never questioned what that meant. I mean, does that mean that yesterday he stumbled and injured himself? Does that – and besides, it was not a traumatic injury. It's something gradually coming on. And then after the treatment by the doctor, he seems to get well in this particular case. So essentially what I'm saying here in this particular case, we have what I believe, Your Honor, is a question of fact for the jury to decide when my client, Charles Silver, knew that he had an injury and whether it was work-related on this case. Now, I also raise an issue with regard to the – what do I say – the Bell situation. On the Bell situation, Your Honor, in all honesty, I see cases going all over the place on that one. I mean, I see courts in one area saying, no, it's preempted, and I see courts in another area saying it's not preempted on this particular case. But the one thing I wanted to say is the reason we threw in Bells here was not necessarily because of the knees. It was because of the back, because we felt that walking on the Bells would cause a back injury. And that's basically all I have to say about this particular case here unless the court has some questions. It appears so. Thank you. Well, thank you, Your Honor. Whenever you're ready, proceed. Thank you, sir. Your Honor, Mr. Schmieder, may it please the Court, my name is Kurt Reitz, and I represent Illinois Central as the affiliate in this matter. Some of the facts are important here. The original complaint was filed in this case on December 28, 2007. And it was filed on December 28, 2007. And he alleges injuries to his back, his neck, and his knees from work as a tractor and a machine operator. And he alleges in the complaint that he worked for Illinois Central from 1970 to the present. He alleges a loss of money. He alleges a diminution in earning capacity. And he alleges permanent total injuries to his knees and neck in addition to his back, which is what we're hearing here. And, you know, when I look at this, I'm coming down here for a lawyer, and you wonder how in the world we have five summary judgments in St. Clair County in this type of case. And the reason is we quickly learned that Mr. Schmieder was not a present employee of the Illinois Central at the time he filed the suit. That over two years previously, he had left the Illinois Central voluntarily, not under any medical restriction, and taken a job for over $20,000 a year more as a union, full-time union official. And so he had no wage loss. He had no loss of earning capacity. In fact, his wages went up after he left the Illinois Central, and he voluntarily, after his term at the union expired, he voluntarily left that job. So we got summary judgment on his wage loss. It's not appealed here. We also got summary judgment on his knees, which is going to be important in a moment here, because he had no medical care or treatment to his knees. Not only did he have no medical care or treatment to his knees, but by the time the 213 witnesses were disclosed, they had no doctor disclosed on his knees, and they had no causation, even if there would have been any kind of medical treatment. The exact same thing is true for the neck. He had no medical treatment for his neck. They had no doctor disclosed for his neck. They had no doctor disclosed on the causation issue, even if they had treatment for his neck, and summary judgment was granted. None of those, the neck, the knees, the wage loss, are subject to any kind of appeal here. And, in fact, they didn't even file anything in opposition at the trial court level. As to the ballast, the same is true. Nothing was even filed in opposition at the trial court level. And that ballast claim, we would respectfully suggest, is completely mooted here by virtue of the fact that we got summary judgment on the knees, which is the only ballast claim, and he hasn't appealed the knees. And Mr. Schmieder, and I'm sure he's just mistaken, but Mr. Schmieder says to you folks that this was also important for the background. Well, at page 17 of his own brief, it says, under the ballast argument, the plaintiff alleged, among other things, repetitive trauma to his knees as a result of his employment duties, and it goes on to make this ballast argument. This ballast is about knees. To the extent there are ballast claims in this country, they're about knees. They're not about backs. I'm unaware of any medical literature that would suggest it, but it doesn't matter. It's at page 17 of his own brief, the very bottom line of page 17. So we would respectfully suggest that the ballast claim has been mooted. So what we're really talking about here now is a back claim for which Dr. Garnett saw this gentleman one time. No surgery, no treatment, and no wage claims. And I would respectfully suggest that it's starting to make sense how we got five summary judgments in St. Clair County. The issue here on the statute of limitations is very simple. The suit's not filed until December 28, 2007, so any back claim in this case would have to have approved for statute of limitation purposes after December 27, 2004, and here we have what is completely uncontested. On July 5, 2004, this gentleman on his home outside the statute of limitations went to a chiropractor, Dr. Stanfield, for back pain. He completed a form at Dr. Stanfield's office that says reason for visit, and then it says the reason for visit is as a result of work. And then in the history— Does it say work on the railroad, work regarding ballasts, or work in the yard? No, it says work. It says work. In fact, the record documents it through both the plaintiff and us, and it says the reason for the visit is as a result of— and he circles work as opposed to sports, auto, trauma, or crime. And then it goes on to say that in the record itself, the doctor has gradual onset of lower lumbar spine pain. He recommends films. He actually recommends six treatments. This isn't any de minimis injury. He recommends a course of six treatments, two of which he has, and then he has a heart attack, and the treatments are abruptly ended for that time. But this isn't any kind of de minimis injury, and URI doesn't apply here other than when URI stands for when the injury manifests itself. It's for an insidious disease like asbestosis or something that would develop slowly and over the course of time, but when it manifests itself, there's no question here that it has manifested itself. The man went to a doctor. It's manifested. Now, that's been—URI has been tweaked, and it's been added to over the years to add not only when it manifests itself, but when you know or have reason to know the cause, and we have that here, too. We have this gentleman in his own hand circling what is it related to. It's related to work. So what we have here, on top of that, we have Dr. Garnett in his one visit in December of 2005 saying that back pain began years ago. Within a year of when the statute runs, the back pain began years ago. I don't even think we need it, but that's also there. So what's even more an issue as you get further into this, and Mr. Schmieder is absolutely correct, this is a federal statute. It's governed by federal law, and the federal law on this is very clear and very strong, and especially in the Seventh Circuit, it's very clear and very strong on the statute of limitations. This is not a situation where you just say question of fact, throw up your hands, and let the jury decide. That's not what happens in these statute of limitation cases. Under the FBOA, the statute of limitations is a condition precedent. It's a statutory clause of action. It's a condition precedent that the plaintiff prove compliance with the statute of limitations in order for him to go forward. It's not an affirmative defense. It's a condition precedent for the plaintiff to show. That means it's the plaintiff's burden, not mine, but the plaintiff's burden to show that the lawsuit was timely filed. And under Fries and Torres, which are both Seventh Circuit cases, both cited prominently in our papers, the controlling Seventh Circuit opinion, the standard is an objective one. It's an objective one. It's not, oh, we've created a question of fact, so now let's the jury decide. The standard for the statute of limitations under Fries and Torres in the Seventh Circuit is an objective one, not just some question of fact. And here we submit that under any reasonable application of the objective standard when a plaintiff circles work on a gradual fact meeting and then comes in and files a lawsuit that says it's related to work and it came along gradually, that that statute started. And that is exactly what happened in Fries with a hearing loss claim. That is exactly what happened in Torres with an acorn. In fact, in Fries, the plaintiff hadn't even gone to a doctor when the Seventh Circuit termed the statute grant because that's how he knew he had hearing loss. So what is the plaintiff's response? And first let me say I appreciate the candor that Mr. Speakers had here today. He admits, as I understand, his visit with Dr. Stanfield occurred. He admits the medical record is genuine. They even attach it in their papers at the motion level. They admit that he circled work. They admit all the facts that we've used to get to this objective analysis. But what they say is, number one, and he's not saying this today but this is what's in the papers, number one, no doctor told him that his fact meeting was work related outside the statute of limitations. That's one of the major points of his brief. And number two, that plaintiff must be, and I'll put it in air quotes here, the plaintiff must be sure of his cause in order for the statute to run, and we would respectfully suggest that that's just not the law. The case law and the statute of limitations, again, FELA, again, federal law, again, Seventh Circuit, not only is it not necessary for a doctor to tell you your claim is related, the case law is clear, you can't wait for a doctor to tell you that your claim is related and you have a permanent duty to investigate yourself. And that's Freeze, that's Tolston, it goes on and on. In addition, on the same issue, where there's a medical history like this by the plaintiff establishing a start date for the statute of limitations, it's not sufficient just to file an affidavit saying I didn't know. In other words, if you look at the affidavit here, which is very fascinating, it doesn't challenge any of the facts that we're asserting as the basis for our statute of limitations here. He says no doctor told him. We've never suggested any doctor told him. It's not necessary. The fact of the matter is the court at the trial court level found that this gentleman knew or should have known. He suggests that no doctor told him, told Dr. Gourmet. Same thing. Doesn't matter. And the only thing in that entire affidavit that at all contradicts this, he says I didn't know. And the case law is bang, bang, bang. He's had case after case, almost a string site, that says when all you do is deny what's already been established in the record, that doesn't avoid summary judgment. So we realize summary judgment is a drastic remedy. And we realize, though, that the Seventh Circuit has set out these cases requiring an objective analysis and saying wholesome that a plaintiff need not be sure which cause is predominant as long as he or she knows of a potential cause. That's right out of the Seventh Circuit. So while we realize the knee-jerk reaction is that they question the fact of summary judgment reversion, that's not the way it works, I would submit, under this case law involving the FELA statute of limitations, involving the Seventh Circuit, we've been over and over this again. If you look at the two cases, the primary cases we cited, freeze involves deposition testimony on the plaintiff where the plaintiff says and his wife say we didn't know. And they find under an objective analysis that he had admitted enough in other parts of his hearing started that he should have investigated. Tolston, again, also involves verified testimony by the plaintiff. And, again, they find. So this plaintiff, I would submit this is a stronger case because the plaintiff is not affirmatively stating in some deposition that I was completely unaware and explaining this in any form or fashion. What we have here is clear treatment for his back outside the statute of limitations, x-rays outside the statute of limitations, a course of treatment set up of six visits, two of which occurred outside the statute of limitations. And then to cap it off, the plaintiff, in his own hand, circling as the reason for the visit were outside the statute of limitations. And if that doesn't start the statute under an objective analysis, then I would submit I don't know what does. In terms of the ballast, I really believe it's moved because when summary judgment was granted on the knees on January 11, 2010, the plaintiff didn't appeal it here. It's been moved. The plaintiff never responded to the ballast motion at the trial court level. There's no hearing transcript. All there is is our record, which is extensive. So if you do get to the merits, the ballast claim is preempted in our opinion. Again, it's governed by federal law. There's no question of fact here. The argument and the response are complicated, so I don't probably can't be discussed intelligently due to time constraints here. But in essence, it goes like this. This man worked in maintenance of the way. He's working on track. The cases that Bob says go all over the place, they don't go all over the place. When you're working on track, when it's track-supported ballast, the cases are pretty clear. And the cases say when it's ballast-supported track, then the federal regulation applies and there's preemption. Where the cases start to get all over the place is when you get off on walkways, where conductors and training are walking on walkways somewhere out here. There's no testimony by the plaintiff. We attached the entire plaintiff's deposition. There's not one word of testimony by this plaintiff that he ever had any kind of complaint or problem walking on walkways. What he's talking about is working on track. What he's talking about is unloading ballast trains on track for maintenance of track. And there's no expert testimony at all. And I would suggest that when the plaintiff cites cases for walkway ballast, he's citing them because the result is good, but there's no application here. And to simply quote these track safety standards that are promulgated to cover the subject matter, we complied with the regulations. There's not one piece of paper, not one affidavit, nothing to suggest anything to the contrary. There's no expert testimony by the plaintiff that even giving an opinion that we didn't comply with these regulations. And the Sixth Circuit opinion in Nichols and the other state and federal courts say that's the end of the issue. But, again, I really don't think you get the ballast because under any reasonable analysis, when you look at what this ballast case is about, ballast is about these. They've admitted that. They've admitted it in their appellate brief. It's about these at the bottom, page 17, and we already have some results on these. If there's nothing else, Your Honor. Nothing? Thank you. Any rebuttal? Just a little bit, Your Honor. Here's the question I have. Can I ask you real quick? Sure. Do you agree that it's a condition precedent in this case, as opposed to an affirmative defense of statute of limitations under the FDLA? Okay. Can I say something to you? Sure. When I was at St. Louis Juvenile, him always made me say precedence. Precedence. Yeah. And I'm sorry. He did that at Mizzou also. Okay. I said farther in the back. I apologize. I shouldn't have said that. You were listening closer than I was. I get to ask the question now. Here's basically what it is. We make the allegations that, number one, that he did not discover it within a certain time period. And that usually gets us fired. Okay? So, yes, the burden. We have an affirmative duty to answer your question, Your Honor. Okay? On that. I thought it's only questioning. Okay. But when it comes to when they start looking for summary judgment, then they have the duty to show that there's no genuine issue of fact in the case. But let me kind of say several things which troubles me in this particular case. One, if, let's say, on July 3rd, Charlie Schultz is out there, trips and falls, and his back is hurting him. Okay? He goes to the chiropractor. What's the reason for your visit here at work? And he gets these x-rays that they're at L4-5 level, and that after one adjustment he's fine. He has no more treatment or anything like this. Okay? I do not think that that sets off the notion of special limitations because basically he works. Well, he goes off on a heart attack for, I think, two or three months. Okay? But then he goes back to his job at work, and then he gets this union done on this. So he doesn't have anything here. It seems to me that then the argument comes that in 1973 when he chipped his vertebrae that he's stopped or precluded from issuing or stating that he has a back claim on this particular case. And what my argument is in this particular case, he puts down the back, but it doesn't tell us, you know, what's the reason? Is it temporary? Is it passing? Is it permanent or anything else like this? And then the other thing, too, is when he sees Dr. Garnett, Garnett is at a different level where he finds the major problems that Dr. Stanfield found. So I'm looking at this particular case, and I'm saying to myself, even though it was not a permanent thing, now had he seen Dr. Stanfield and that his condition had not changed up until the time he sees Dr. Garnett, then I think we have a problem there because then I think there's a continuing problem sitting there on that. But, you know, you're out there, these doctors will say, and as Dr. Garnett said in his deposition, he says, you take a 58-year-old man, 100% of them are going to have degenerative disc disease in this thing. Now the question is, basically, has that been aggravated by his work out there on the radio? And I think that this mere checking of this thing, without anything more, either by the doctor or even asking the plaintiff this question, what did you mean by that? That was never asked of the plaintiff in this case, nor was the doctor ever deposed. So what I'm saying here, it seems to me that at best we have a question of fact on that issue for the jury in this case. Did he also indicate on the form that he worked for the CNN Railroad for 35 years as a foreman? As a foreman, yeah, but he was a working foreman. Okay. Okay, so yes. And it says, and it came on granted. But then two days later after he said that, it's improved. Everything's fine on this thing here. So that's where I say it becomes a question of fact for the jury in this particular case to decide. Unless I can answer some other questions about conditions preceding that. Very well put, Mr. Schmieder. But that's his demonstration. I think you're right. I think we all agree with you. Thanks, both of you. We'll take the matter under advisement and get you a decision as soon as we can. Thanks to both of you.